**E-FILED**
Wednesday, 18 October, 2006  11:44:44 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| SHEET METAL WORKERS LOCAL 218 HEALTH & WELFARE FUND, SHEET METAL, WORKERS LOCAL 218 PENSION FUND, SHEET METAL WORKERS LOCAL 218 APPRENTICESHIP  FUND, SHEET METAL WORKERS LOCAL 218 FRINGE BENEFIT FUNDS, SHEET METAL WORKERS LOCAL 218 INDUSTRY FUND and SHEET METAL WORKERS LOCAL #218 | ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) No. ) |
| ADVANCED METALCON & ASSOC. CORP., | ) ) |
| Defendant. | ) |

## <u>COMPLAINT</u>

NOW COMES the Plaintiffs, SHEET METAL WORKERS LOCAL 218 HEALTH & WELFARE FUND, SHEET METAL WORKERS LOCAL 218 PENSION FUND, SHEET METAL WORKERS LOCAL 218 APPRENTICESHIP FUND, SHEET METAL WORKERS LOCAL 218, SHEET METAL WORKERS LOCAL 218 FRINGE BENEFIT FUNDS, SHEET METAL WORKERS LOCAL 218 INDUSTRY FUND, by and through their attorneys, Cavanagh & O'Hara, complaining of the Defendant, ADVANCED METALCON & ASSOC. CORP., and alleges as follows:

1.    This action arises under the Employee Retirement Income Security Act of 1974, as amended U.S.C. Title 29, Section 1145.

2.    The Plaintiff Funds are employee benefit funds administered pursuant to the terms and provisions of the  Declarations of Trusts creating said Funds as are required to be maintained and administered in accordance with the provisions of the Labor Management Relations Act of 1947 (as amended), and the Employee Retirement Income Security Act of 1974 (ERISA), (as amended),

1

29 U.S.C. §1001 <u>et seq</u>  and other applicable State and Federal Laws.  The address of the Plaintiff Funds is Sheet Metal Workers Local #218 Fringe Benefit Funds, 2855 Via Verde, Springfield, Illinois..

 3. That the Defendant is an Employer engaged in an industry within the meaning of ERISA, 29 U.S.C. Sections 1002(5), (11), (12) and (14).  Defendant employs individuals who are members of, and represented by, Sheet Metal Workers Local 218, a local labor organization, and has agreed to provide participation in the Plaintiff Funds, so as to provide for benefits for employees of Defendant.

 4. The Defendant's address is 5400 Fieldstone Way, Johnsburg, Illinois 60050.

 5. The Defendant  is bound by a collective bargaining agreement with SHEET METAL WORKERS LOCAL 218 which provides for participation in the various Plaintiff Funds as shown by Plaintiffs' **Exhibit A** attached hereto in pertinent part and made a part hereof.

 6. Pursuant to ERISA (U.S.C. Title 29, Section 1145), the Defendant is required to make contributions to Plaintiffs in accordance with the terms and conditions of the Plaintiffs' Agreements and Declarations of Trust, and to pay liquidated damages in the event said contributions are not timely made.  The Trust Agreement in pertinent part  is attached hereto and made a part hereof as **Exhibit B.**

 7. That Defendant has repeatedly refused to submit payments for contributions and the applicable liquidated damages as a consequence of late payments for the period of December 2005 and January 2006 in the amount of $27,386.12, a copy of the report forms submitted by Defendant are attached hereto as **Exhibit C.**

 8. That despite Defendant's obligations under the Collective Bargaining Agreement to make contributions to the Fund, Defendant has failed to submit the contribution reporting forms  for the period of February 2006 through current; all of which are in violation of it's duties under the Collective Bargaining Agreement and Declaration of Trust to which the Defendant is bound.

 9. That Plaintiffs have made demands upon Defendant for the delinquent contributions

and late fees due, but Defendant has refused to satisfy said demands. The demands are attached hereto and made a part hereof as **Exhibit D.**

10.     That pursuant ERISA, 29 U.S.C. §1132(g)(2), and to the terms of the Agreement and Declaration of Trust (**Exhibit B**), the Defendant is liable for reasonable attorney fees and court costs and all other reasonable expenses incurred by Plaintiffs in the collection of delinquent contributions and liquidated damages.

11.     Attached hereto and incorporated herein as **Exhibit E** is the Affidavit of Britt W. Sowle in support of his request for attorney fees in the amount of $1,210.65,  incurred in the prosecution of this matter.

WHEREFORE, Plaintiffs pray as follows:

A.     That Judgment be entered in favor of Plaintiff and against Defendant for its employee contributions for the period of December 2005 and January 2006 in the amount of $24,896.48 plus pre-judgment interest, liquidated damages in the amount of $2,489.64; and further, that Judgment be awarded for any additional months in which contributions, at the time of Judgment have not been remitted to the Fund, plus reasonable attorneys fees incurred by Plaintiffs in prosecuting this claim,

B.     That Defendant be specifically required to perform and continue to perform all its obligations to the Plaintiff Funds, specifically submit reporting forms for the period of February 2006 through current.

C.     That Defendant be decreed to pay to the Plaintiff Funds their reasonable attorneys fees in the amount of $1,210.65,  as provided by ERISA, 29 U.S.C. Section 1132(g)(2).

D.     That Defendant be decreed to pay all costs attendant to the cost of these proceedings; and

E.     That Plaintiffs have such other and further relief as by the Court may be deemed just and equitable, all at Defendant's cost.

SHEET METAL WORKERS LOCAL 218 HEALTH
& WELFARE FUND, et. al., Plaintiffs,

3

By:  s/ Britt W. Sowle

BRITT W. SOWLE
**CAVANAGH & O'HARA**
Attorneys for Plaintiffs
1609 North Illinois Street
Swansea, Illinois 62226
Telephone:     (618)222-5945
Facsimile:     (618) 222-6755
britt@cavanagh-ohara.com

S:\c&o\Files\SMW 218\Deliq\Advanced  Metal\Complaint.wpd

**E-FILED**
Wednesday, 18 October, 2006  11:44:57 AM
Clerk, U.S. District Court, ILCD



**COMMERCIAL AGREEMENT**

Between the:

SHEET METAL WORKER'S INTERNATIONAL ASSOCIATION

LOCAL UNION #218C

and

MID-STATE SHEET METAL AND AIR CONDITIONING
CONTRACTORS ASSOCIATION

for

Champaign, Coles, Cumberland, Douglas, Ford, Moultrie, Piatt,
Shelby, and Vermilion Counties in Illinois

TERM OF CONTRACT:

July 12, 2001 – July 31, 2004



EXHIBIT

A

wage scale specified in this Agreement, the higher wage scale of the jobsite Union shall be paid to the employees employed on such work in the home shop or sent to the jobsite.

SECTION 3. The provisions of Section 2 of this Article, Section 2 of Article II, and Section 1 of Article III shall not be applicable to the manufacture for sale to the trade or purchase of the following items:

1. Ventilators
2. Louvers
3. Automatic and fire dampers
4. Radiator and air conditioning unit enclosures
5. Fabricated pipe and fittings for residential installations and light commercial work as defined in the locality
6. Mixing (attenuation) boxes
7. Plastic Skylights
8. Air diffusers, grilles, registers
9. Sound attenuators
10. Chutes
11. Double-wall panel plenums
12. Angle rings

SECTION 4. The provisions of Section 2 of this Article shall not be applicable to AIR POLLUTION CONTROL SYSTEMS fabricated for the purpose of removing air pollutants, excluding air conditioning, heating and ventilating systems. In addition, the provisions of Section 2 of this Article will not be applicable to the manufacture of spiral pipe and fittings for high pressure systems.

SECTION 5. Except as provided in Sections 2 and 6 of this Article, the Employer agrees that journeymen, preapprentice and classified sheet metal workers hired outside the territorial jurisdiction of this Agreement shall receive the wage scale and working conditions of the local Agreement covering the territory in which such work is performed or supervised.

SECTION 6. When the Employer has any work specified in Article I of this Agreement to be performed outside the area covered by this Agreement and within the area covered by another Agreement with another local union affiliated with the Sheet Metal Workers' International Association, and qualified sheet metal workers are available in such area, he may send no more than two (2) sheet metal workers per job into such area to perform any work which the Employer deems necessary, both of whom shall be from the Employer's home jurisdiction. All additional sheet metal workers shall come from the area in which the work is to be performed. Journeymen sheet metal workers covered by this Agreement who are sent outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Section 1 of this Article but in no case less than the established wage scale of the local Agreement covering the territory in which such work is performed or supervised, plus all necessary transportation, travel time, board and expenses while

employed in that area, and the Employer shall be otherwise governed by the established working conditions of the local Agreement. If employees are sent into an area where there is no local Agreement of the Sheet Metal Workers' International Association covering the area then the minimum conditions of the home local union shall apply.

SECTION 7. In applying the provisions of Sections 2, 5, and 6 of this Article VIII, the term "wage scale" shall include the value of all applicable hourly contractual benefits in addition to the hourly wage rate provided in said Sections.

SECTION 8. Welfare benefit contributions shall not be duplicated.

When sheet metal workers are employed temporarily outside the jurisdiction of their home local union, the parties signatory to this Agreement agree to arrange through the Health and Welfare Trust Fund to transmit health and welfare contributions made on behalf of the employee to the Health and Welfare Trust Fund in the employee's home local union.

The parties to this Agreement agree to establish a system for continuing health and welfare coverage for employees working temporarily outside the jurisdiction of the local collective bargaining agreement when health and welfare contributions are transmitted on their behalf by trust funds from other areas.

SECTION 9. Wages at the established rates specified herein shall be paid by check or cash in the shop or on the job at or before quitting time on Friday of each week, and no more than seven (7) days' pay will be withheld. However employees when discharged shall be paid in full. *Refer to Addendum #5, Section 9c, Page 24

SECTION 10. Journeymen, apprentice, preapprentice and classified sheet metal workers who report for work by direction of the Employer, and are not placed to work, shall be entitled to two (2) hours' pay at the established rate. This provision, however, shall not apply under conditions over which the Employer has no control.

SECTION 11. Each Employer covered by this Agreement shall employ at least one (1) journeyman sheet metal worker who is not a member of the firm on all work specified in Article I of this Agreement.

SECTION 12(a). Contributions provided for in Section 12(b) of this Article will be used to promote programs of industry education, training, negotiation and administration of collective bargaining agreements, research and promotion, such programs serving to expand the market for the services of the Sheet Metal Industry, improve the technical and business skills of Employers, stabilize and improve Employer-Union relations, and promote, support and improve the employment opportunities for employees. No part of any such payments, however, shall be used for any other purpose except as expressly specified above.

5

(b). The Employer shall pay the Sheet Metal and Air Conditioning Contractors' National Industry Fund of the United States (IFUS) seven cents ($0.07) per hour for each hour worked on and after the effective date of this Agreement by each employee of the Employer covered by this Agreement. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted to IFUS, 4201 Lafayette Center Drive, Chantilly, Virginia 22021-1209, or for the purpose of transmittal, through Mid State Sheet Metal & Air Conditioning Contractors Association.

(c). The IFUS shall submit to the Sheet Metal Workers' International Association not less often than semi-annually written reports describing accurately and in reasonable detail the nature of activities in which it is engaged or which it supports directly or indirectly with any of its funds. One time per year, the IFUS shall include in such written report a financial statement attested to by a certified public accountant containing its balance sheet and detailed statement of annual receipts and disbursements. Further specific detailed information in regard to IFUS activities or its receipts and/or expenditures shall be furnished to the Sheet Metal Workers' International Association upon written request.

(d). Grievances concerning use of IFUS funds for purposes prohibited under Section 12(a) or for violations of other subsections of this Section may be processed by the Sheet Metal Workers' International Association directly to the National Joint Adjustment Board under the provisions of Article X of this Agreement. In the event such proceeding results in a deadlock, either party may, upon ten (10) days notice to the other party, submit the issue to final and binding arbitration. The Arbitrator shall be selected by the Co-Chairmen of the National Joint Adjustment Board. The Arbitrator shall be authorized to impose any remedial order he deems appropriate for violation of this Section, including termination of the Employer's obligation to contribute to the IFUS. The authority of the Arbitrator is expressly limited to a determination of a deadlocked issue under this Section, (Section 12, Article VIII), and no other.

SECTION 13(a). Contributions provided for in Section 13(b) of this Article will be used to promote programs of industry education, training, negotiation and administration of collective bargaining agreements, research and promotion, such programs serving to expand the market for the services of the Sheet Metal Industry, improve the technical and business skills of Employers, stabilize and improve Employer-Union relations, and promote, support and improve the employment opportunities for employees. No part of any such payments, however, shall be used for any other purpose except as expressly specified above.

(b). The Employer shall pay to the Betterment of Industry Fund, 2210 Carlisle, Champaign, IL 61821, (the local industry fund), eight cents ($0.08) per hour for each hour worked on or after the effective date of this Agreement by each employee of the Employer covered by this Agreement. Payment shall be made monthly on or before the 20th day of the succeeding month.

(c). The local industry fund shall furnish to the Business Manager of the Union, not less often than semi-annually, written reports describing in reasonable detail the nature of activities in which it is engaged or which it supports directly or indirectly with any of its funds. One time per year, the local industry fund shall include in such written report, a statement attested to by a certified public accountant and containing its balance sheet and detailed statement of receipts and disbursements. Further specific detailed information in regard to local industry fund activities or its receipts and/or disbursements shall be furnished to the Business Manager of the Union upon his written request.

(d). Grievances concerning use of local industry fund monies to which an Employer shall contribute for purposes prohibited under Section 13(a) or for violations of other subsections of this Section shall be handled under the provisions of Article X of this Agreement. The National Joint Adjustment Board shall be authorized to impose any remedial order for violation of this Section, including termination of the Employer's obligation to contribute to the local industry fund.

SECTION 14. Effective as of the date of this Agreement the Employers will contribute to the International Training Institute for the Sheet Metal and Air Conditioning Industry (ITI) twelve cents ($0.12) per hour for each hour worked by each employee of the Employer covered by this Agreement. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted as designated by the Trustees of the ITI, or for purposes of collection and transmittal through (*See Addendum #8, Article XI, Section 6, Page 30).

Effective as of the date of this Agreement the Employers will contribute to the National Energy Management Institute Committee (NEMIC), a jointly administered trust fund, three cents ($0.03) per hour for each hour worked by each employee of the Employer covered by this Agreement. Payment shall be made on or before the 20th of the succeeding month and shall be remitted as designated by the Trustees of the NEMIC, or for the purposes of collection and transmittal through (*See Addendum #8, Article XI, Section 7, Page 30).

Effective as of the date of this Agreement the Employers will contribute to the Sheet Metal Occupational Health Institute Trust (Institute) two cents ($0.02) per hour for each hour worked by each employee of the Employer covered by this Agreement until the Institute Trustees determine that the Trust is financially self-sufficient. Payment shall be made on or before the 20th of the succeeding month and shall be remitted as designated by the Trustees of the Institute, or for the purposes of collection and transmittal through. (*See Addendum #8, Article XI, Section 8, Page 30).

The parties agree to be bound by the separate Agreements and Declarations of Trusts establishing the International Training Institute for the Sheet Metal and Air Conditioning Industry, the National Energy Management Institute Committee, the Sheet Metal Occupational Health Institute Trust, and the Industry Fund of the United States and the separate agreements and declarations of trusts of all other local or national programs to which it has been agreed that contributions will be made. In

6

7

addition, the parties agree to be bound by any amendments to said trust agreements as may be made from time to time and hereby designate as their representatives on the Board of Trustees such trustees as are named together with any successors who may be appointed pursuant to said agreements

The parties authorize the trustees of all national funds to cooperatively establish uniform collection procedures to provide for efficient and effective operation of the various national trusts

## ARTICLE IX

SECTION 1. Journeymen, apprentice, preapprentice and classified sheet metal workers covered by this Agreement shall provide for themselves all necessary hand tools.

SECTION 2. Journeymen, apprentice, preapprentice and classified sheet metal workers covered by this Agreement shall not be permitted or required as a condition of employment to furnish the use of automobile or other conveyance to transport men, tools, equipment or materials from shop to job, from job to job, or from job to shop; facilities for such transportation to be provided by the Employer. This provision shall not restrict the use of an automobile or other conveyance to transport its owner and personal tools from home to shop or job at starting time or from shop or job to home at quitting time.

## ARTICLE X

The Union and the Employer, whether party to this Agreement independently or as a member of a multi-employer bargaining unit, agree to utilize and be bound by this Article.

SECTION 1. Grievances of the Employer or the Union, arising out of interpretation or enforcement of this Agreement, shall be settled between the Employer directly involved and the duly authorized representative of the Union, if possible. Both parties may participate in conferences through representatives of their choice.

To be valid, grievances must be raised within thirty (30) calendar days following the occurrence giving rise to the grievance, or, if the occurrence was not ascertainable, within thirty (30) calendar days of the first knowledge of the facts giving rise to the grievance.

SECTION 2. Grievances not settled as provided in Section 1 of this Article may be appealed by either party to the Local Joint Adjustment Board where the work was performed or in the jurisdiction of the Employer's home local and such Board shall meet promptly on a date mutually agreeable to the members of the Board, but in no case more than fourteen (14) calendar days following the request for its services, unless the time is extended by mutual agreement of the parties or Local Joint Adjustment Board. The Board shall consist of representatives of the Union and of the local Employers' Association and both sides shall cast an equal number of votes at

each meeting. The local Employers' Association, on its own initiative, may submit grievances for determination by the Board as provided in this Section. Except in the case of a deadlock, a decision of a Local Joint Adjustment Board shall be final and binding.

Notice of appeal to the Local Joint Adjustment Board shall be given within thirty (30) days after termination of procedures prescribed in Section 1 of this Article, unless the time is extended by a mutual agreement of the parties.

SECTION 3. Grievances not disposed of under the procedure prescribed in Section 2 of this Article, because of a deadlock or failure of such Board to act, may be appealed jointly or by either party to a Panel, consisting of one (1) representative appointed by the Labor Co-Chairman of the National Joint Adjustment Board and one (1) representative appointed by the Management Co-Chairman of the National Joint Adjustment Board. Appeals shall be mailed to the National Joint Adjustment Board * Notice of appeal to the Panel shall be given within thirty (30) days after termination of the procedures prescribed in Section 2 of this Article. Such Panel shall meet promptly but in no event more than fourteen (14) calendar days following receipt of such appeal, unless such time is extended by mutual agreement of the Panel members. Except in case of deadlock, the decision of the Panel shall be final and binding.

Notwithstanding the provisions of Paragraph 1 of this Section, an Employer who was not a party to the Labor Agreement of the area in which the work in dispute is performed may appeal the decision of the Local Joint Adjustment Board from that area, including a unanimous decision, and request a Panel hearing as set forth in Section 3 of this Article, providing such appeal is approved by the Co-Chairmen of the National Joint Adjustment Board

SECTION 4. Grievances not settled as provided in Section 3 of this Article may be appealed jointly or by either party to the National Joint Adjustment Board. Submissions shall be made and decisions rendered under such procedures as may be prescribed by such Board. Appeals to the National Joint Adjustment board shall be submitted within thirty (30) days after termination of the procedures described in Section 3 of this Article. The Procedural Rules of the National Joint Adjustment Board are incorporated in this Agreement as though set out in their entirety. (Copies of the procedures may be obtained from the National Joint Adjustment Board ) *SEE PAGE 10

SECTION 5. A Local Joint Adjustment Board, Panel and the National Joint Adjustment Board are empowered to render such decisions and grant such relief to either party as they deem necessary and proper, including awards of damages or other compensation.

SECTION 6. In the event of non-compliance within thirty (30) calendar days following the mailing of a decision of a Local Joint Adjustment Board, Panel or the National Joint Adjustment Board, a local party may enforce the award by any means

8

9

B. PAY AFTER QUITTING: When an employee quits of his own
accord he shall wait for the regular pay day for his wages.

C. No more than seven (7) consecutive calendar days will be withheld.

## SECTION 10. SHOW TIME:

A. Day begins at 8:00 a.m.; work any part till 10:00 a.m.; receives two (2) hours
pay.

B. Day begins at 8:00 a.m; work after 10:00 a.m.; leave before 12:00 p.m,
receives four (4) hours pay.

C. Day begins at 8:00 a.m.; work after 12:30 p.m.; leave before 2:30 p.m.;
receives six (6) hours pay.

D. Day begins at 8:00 a.m.; work after 2:30 p.m.; leave before 4:30 p.m.;
receives eight (8) hours pay.

SECTION 15. FILING DATE FOR REPORTS & PAYMENTS: The payments and
reports of the following local funds shall be sent to the National City Bank. Champaign,
Illinois, on or before the fifteenth (15th) of each month following the calendar months in
which the hours were worked.

A. APPRENTICE TRAINING CONTRIBUTION: The Employer shall pay
the amount per hour as per the attached wage and fringe benefits detail sheet
for each hour worked by all employees of the Employer covered by this
Agreement to "The Sheet Metal Workers' Local #218 Joint Fund for the
Training of Apprentice and Journeymen."

1. A "Joint Apprentice and Journeyman Training Committee" shall have
the sole custody, ownership, and administration of this Fund.

2. Sheet Metal Workers' Local #218 agrees to designate and to continue
to designate three (3) trustees to administer the "Joint Apprentice and
Journeyman Training Trust."

3. A yearly audit of the "Joint Apprentice and Journeyman Training
Trust" will be available at the Union Hall for inspection by any
individual covered by this contract, Sheet Metal Worker of Local
#218, and member of Mid-State Sheet Metal and Air Conditioning
Contractors Association.

4. The Joint Fund (see ARTICLE XIII) by majority vote, shall determine
the needs including, but not in limitation thereof, the funds, equipment,
and the personnel for the proper functioning of the Training Program.

5. If in the administration of the Training Program, the Committee shall
be unable to arrive to a decision of any question arising, the subject in
controversy shall be submitted to a third party mutually agreed upon.
The decision of such named person shall be binding upon all parties.

6. Local #218 will enforce collection of Training Fund.

B. BETTERMENT OF INDUSTRY FUND: The Employer shall pay the
amount per hour as per attached wage and fringe benefits detail sheet per
hour for each hour worked by all employees of the Employer covered by this

Agreement to the "Betterment of the Industry Fund" of the Mid-State Sheet
Metal and Air Conditioning Contractors Association.

1. The Mid-State Sheet Metal and Air Conditioning Contractors
Association shall have the sole custody, ownership, and administration
of the Betterment of Industry Fund.

2. The rate of the contributions to the "Sheet Metal Workers' Local #218
Joint Training Fund" and the "Betterment of Industry Fund" of the
Mid-State Sheet Metal and Air Conditioning Contractors Association
shall be reviewed and/or adjusted annually to meet the anticipated
needs of the purposes set forth in I and II of this SECTION. The
review and adjustment shall be accomplished on or before November
first (1st) of each year, effective January first (1st) of the following
year.

C. NATIONAL INDUSTRY FUND: The Employer shall pay and transmit the
amount per hour as per attached wage and fringe benefits detail sheet to the
Sheet Metal and Air Conditioning Contractors "National Industry Fund of the
United States" in accordance with SECTION 12.

D. INTERNATIONAL TRAINING INSTITUTE: The Employer shall pay
and transmit the amount per hour as per attached wage and fringe benefits
detail sheet to the "International Training Institute" for the Sheet Metal and
Air Conditioning Industry in accordance with SECTION 14 of the SFUA.

SECTION 16. LOCAL PENSION: The Employer shall pay and transmit the amount
per hour as per attached wage and fringe benefits detail sheet to the Sheet Metal
Workers' Local #218 "Pension Trust Fund". The payment shall be sent to the National
City Bank. Champaign, Illinois, on or before the fifteenth (15th) of each month following
the calendar month in which the hours were worked.

SECTION 17. NATIONAL PENSION: The Employer shall pay and transmit the
amount per hour as per attached wage and fringe benefits detail sheet to the Sheet Metal
Workers "National Pension Fund". The payment shall be sent to the National City Bank,
Champaign, Illinois, on or before the fifteenth (15th) of each month following the
calendar month in which the hours were worked.

SECTION 18. HEALTH & WELFARE: The Employer shall pay and transmit the
amount per hour as per attached wage and fringe benefits detail sheet to the Sheet Metal
Workers' Local #218 "Health & Welfare Trust Fund." The payment and report shall be
sent to the National City Bank, Champaign, Illinois, on or before the fifteenth (15th) of
each month following the calendar month in which the hours were worked.

SECTION 19. SASMI:
The Employer shall make monthly payments of an amount equal to three percent (3%) of
the Gross Earnings of each Employee subject to this Agreement to the National
Stabilization Agreement of Sheet Metal Industry Trust Fund (SASMI). Gross Earnings,
for purposes of this Agreement, shall mean (a) total wages paid to an Employee by the
Employer which are reportable by the Employee for Federal Income Tax purposes, and

24

25

(b) any and all contributions paid by such Employer on behalf of the Employee to a pension and/or health and welfare fund.

The Employer agrees to adopt the National Stabilization Agreement of Sheet Metal Industry Agreement and Declaration of Trust as presently constituted and as the same may be amended from time to time, to be bound by all Rules and Regulations of the Plan as adopted by the Trustees, as presently existing and as the same may be amended from time to time.

## Section 20. SHEET METAL WORKERS INTERNATIONAL SCHOLARSHIP FUND:

The Employer will contribute to the Sheet Metal Workers' International Scholarship Fund one cent ($0.01) per hour for each hour worked by each employee of the employer covered by this Agreement. The payment and report shall be sent to National City Bank, Champaign, Illinois on or before the fifteenth (15th) of each month following the calendar month in which the hours were worked.

## Section 21. TEAM FUND:

The Employer will contribute to the TEAM Fund two cents ($0.02) per hour for each hour worked by each employee of the employer covered by this Agreement. TEAM is a joint labor-management committee serving the construction industry in the Champaign County area. The payment and report shall be sent to National City Bank, Champaign, Illinois on or before the fifteenth (15th) of each month following the calendar month in which the hours were worked.

If at a later date, the Business Manager determines that the TEAM committee has become ineffective, the Business Manager, at his sole discretion, may withdraw from participating to the TEAM Fund. In the event that TEAM Fund contributions are discontinued, the existing wage scale shall be increased by two cents ($0.02) per hour.

## Section 22. PAL FUND:

The Employer shall pay and transmit the amount per hour as per the attached wage and fringe benefits detail sheet to the P.A.L. Fund, on the employees who have voluntarily authorized their employer to do so. The Employer shall retain a written copy of the employee's Voluntary Authorization Form for P.A.L. contributions. The payment shall be sent to the National City Bank, Champaign, Illinois on or before the fifteenth (15th) of each month following the calendar month in which the hours were worked.

## Section 23. 401(k) PLAN:

The parties to this agreement have mutually agreed to allow participation by the employees in an existing 401(k) plan which provides for 100% voluntary contributions. The maximum number of voluntary contribution participation levels shall be restricted to three (i.e. $1.00, $2.00, $3.00)

When an existing 401(k) plan is selected, the employee may have their employer withhold one of the three options available from their base rate. The Employer shall send the payment to the National City Bank, Champaign, Illinois for all the 401(k) contributions they withheld for each hour worked on the employees who volunteered to

participate in the 401(k) plan. Payment shall be received on or before the fifteenth (15th) of each month following the calendar month in which the hours were worked.

**SECTION 24.** No new funds will be introduced or added during the contract with exception of discussion and a mutually agreed upon 401K plan. Increases for any existing fund, except the Local Betterment of Industry Fund, shall be taken from the existing wage rate. Decreases from any existing fund shall be added to the existing wage rate.

**SECTION 25. PENALTY:** There will be a penalty of one and one-half percent (1½ ) per month on the gross amount of ARTICLE VIII, SECTIONS #15, 16, 17, 18,19, 20, 21, 22, and 23 if the United States Post Office Department postage date is later than the fifteenth (15th) of the month following the month in which the hours were worked.

In case of an error on the total amount of hours worked, total amount of monies paid of any employee deleted from the report, the one and one-half percent (1½) per month shall be charged against the Employer and compounded monthly until paid.

Any and all penalties collected are to be divided equally between Health & Welfare and Local Pension:

A.  If the Employer fails to pay fringe benefits contributions on time to any of the following funds: Health & Welfare, Savings, Pension, and any other plans, trusts, and funds provided for in this Agreement, the employees shall receive full pay for time lost from work while the work stoppage continues. No work stoppage shall be called because of a delinquency in contributions until seventy-two (72) hours after written notice of the claimed delinquency has been mailed by the Union to the Employer at his usual place of business, if the Employer provided the Union with satisfactory evidence of payment, the work stoppage shall not take place.

B.  No employee has any obligation to work while his wages are delinquent and a work stoppage may be called for wage delinquency at any time. Employee must remain on job or in the shop to collect wages for non-payment of benefits

C.  In the event the Employer delinquency in payment of wages or fringe contributions, the provisions of the no strike clause in this Agreement shall be waived. The rights granted to the employees and union in the event of such delinquency are in addition to any other remedies available under this Agreement or any Trust Agreement intended to require prompt payment of fringe benefit contributions by Employer

D.  Non-payment by an Employer of any contributions when due shall not relieve any other Employer of his or its obligations to make payments.

**E-FILED**
Wednesday, 18 October, 2006  11:45:05 AM
Clerk, U.S. District Court, ILCD

# RESTATED AGREEMENT AND DECLARATION OF TRUST

## OF THE

## SHEET METAL WORKERS LOCAL #218 HEALTH & WELFARE FUND



EXHIBIT

B

## ARTICLE IV

### CONTRIBUTIONS AND COLLECTIONS

Section 4.1 Employer Contributions.

(a)    Each Employer shall make prompt contributions or payments to the Trust Fund in such amount and under the terms as are provided for in the applicable collective bargaining agreement in effect from time to time between the Employer or his bargaining representative and the Union. An Employer may also be required to make contributions in such amount and under such terms as such Employer may be obligated, in writing, to make, provided that such contributions shall be subject to acceptance by the Trustees. The Employer agrees that such contributions shall constitute an absolute obligation to the Trust Fund, and such obligation shall not be subject to set-off or counterclaim which the Employer may have for any liability of the Union or of an Employee.

(b)    Contributions to the Fund shall be paid to the Trustees or to such depository as the trustees shall designate, only by check, bank draft, money order or other recognized written method of transmitting money or its equivalent, made payable to the order of the Trustees of the Sheet Metal Workers Local #218 Health and Welfare Fund. The payment of contributions shall be made periodically at such times as the Trustees shall specify by rules and regulations or as may be provided in the applicable collective bargaining agreement.

(c)    Each Employer shall be responsible only for the contributions payable by him on account of Employees covered by him, except as may be otherwise provided by law. The Association or any other employers association or group shall not be responsible for the contributions, payment or other obligations of any other Employer, or otherwise.

Section 4.2 Employee Contributions. Participants (I) who cease to perform work for an

Employer for which work Employer contributions were required to be paid to this Fund as provided

in Section 4.1 of this Article, and (ii) who, at the time they last performed such work, had been

eligible and qualified to receive benefits under the plan of benefits established by the Trustees under

this Fund, and (iii) who are members of such a class of such Participants as to whom the Trustees,

consistent with applicable law, have in their sole discretion determined to provide continued eligibility

15

for benefits of such type and amount and for such period of time and on such terms as the Trustees in their discretion may wish to make available to such class, shall make periodic contributions or payments to the Trust Fund in such amounts and at such times and subject to such conditions, requirements, limitations and rules as the Trustees in their sole discretion may establish and impose with respect to such class of such Participants.

Section 4.3  Receipt of Payment and Other Property of Trust.

The Trustees or such other person or entity designated or appointed by the Trustees in accordance with Section 5.3 of Article V are hereby designated as the persons to receive the payments heretofore or hereafter made to the Trust Fund by the Employers and Employees. The Trustees are hereby vested with all right, title and interest in and to such moneys and all interest which may be accrued thereon, and are authorized to receive and be paid the same.

Section 4.4  Collection and Enforcement of Payments.  The Trustees, or such committee of the Trustees as the Board of Trustees shall appoint, or the Administrative Manager if one has been appointed and when directed by such committee or by the Board of Trustees, shall have the power to demand, collect and receive Employer payments and all other money and property to which the Trustees may be entitled, and shall hold the same until applied to the purposes provided in this Trust Agreement.  They shall take such steps, including the institution and prosecution of, or the intervention in, such legal or administrative proceedings as the Trustees in their sole discretion determine to be in the best interest of the Trust Fund for the purpose of collecting such payments, money and property, without prejudice, however, to the rights of the Union to take whatever steps it deems necessary and wishes to undertake for such purpose.

Section 4.5  Late Payments.  The Trustees may require the payment by Employers of

16

liquidated damages at the rate of ten percent (10%) of the balance due or as provided in the applicable collective bargaining agreement or provided in a schedule established by the Trustees and of other costs and expenses (such as without limitation, attorneys' fees, filing fees and cost of service of papers and all audit costs incurred by the Trustees and arising out of the collection of such Employer's delinquent contributions. Non-payment, by any Employer, of any contribution or other moneys owed to the Fund shall not relieve any other Employer from his or its obligation to make required payments to the Trust Fund.

Section 4.6 Production of Records. Each Employer shall promptly furnish to the Trustees, on demand, the names of his Employees, their Social Security numbers, the hours worked by each Employee and such other information as the Trustees may reasonably require in connection with the administration of the Trust Fund and for no other purpose. The Trustees and the insurance carrier, when so authorized by the Trustees, may, by their respective representatives, examine the pertinent employment and payroll records of each Employer at the Employer's place of business whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust Fund and of the contracts or policies of insurance. The Union shall, upon the request of the Trustees, promptly furnish information in respect to an Employee's employment status.

Section 4.7 Conduct of Trust Business. The Trustees shall have general supervision of the operation of this Trust Fund and shall conduct the business and activities of the Trust Fund in accordance with the Trust Agreement and applicable law. The Trustees shall hold, manage and protect the Trust Fund and collect the income therefrom and contributions thereto. The Trustees may, in the course of conducting the business of the Trust, execute all instruments in the name of the

17

Sheet Metal Workers Local #218 Health and Welfare Fund, which instruments shall be signed by at least one Employer and one Employee Trustee, with the exception of benefit claim checks which any two (2) Trustees may execute; provided, however, any one Trustee may execute legal documents to commence and process law suits to enforce trust collections on behalf of the Trustees.

Section 4.8 Report on Contributions and Production of Records. The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their social security numbers, the hours worked by each employee, and such other information as the Trustees may reasonably require in connection with the administration of the Trust and Welfare Plan. The Trustees may, on reasonable notice, have an audit made by an independent accountant or its representatives of the payroll of any Employer in connection with the said contributions and/or reports.

All Employers shall be required to maintain records in compliance with procedures developed and communicated by the Administrator from the beginning of such Employer's participation in the fund forward unless given written authorization by the Administrator. Upon request to destroy said records, or in the absence of said authorization, said records must be kept for 10 years. The Trustees shall require the Employer to designate the classification of all of his employees and if the employer fails to do so, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the results of said investigation shall be conclusive.

Where an audit discloses a substantial difference between hours actually worked and an employee's hours reported to the Trust by his Employer, or where the matter has been referred to Fund Counsel for collection or to obtain an audit, regardless of whether the audit discloses a delinquency, the Employer must pay the cost of the audit. Furthermore, where such audit discloses

18

any willful violation of any of the requirements of this Trust Agreement or rules and regulations adopted in connection herewith, those officers and directors of such Employer, if a corporation, who supervised the completion of the report forms, signed report forms, or can be determined to have had personal knowledge of such conduct, shall be personally liable for any underpayment or other pecuniary loss to the Fund as a result of such conduct. Nothing herein shall prevent a personal liability for owners or partners who are not otherwise incorporated.

In addition, the delinquent contributions shall bear interest up to the prime rate of interest as recognized by bank or such other lawful amount as determined by the Trustees from the due date until totally satisfied.

In the event an Employer party to this Trust Agreement or otherwise bound thereby becomes delinquent in his contributions and the Trustees place the account in the hands of legal counsel for collection, said delinquent Employer shall be liable for reasonable attorney's fees and for all reasonable costs incurred in the collection process, including court fees, audit fees, etc. "Reasonable attorney's fees" as used herein shall mean: All reasonable attorney's fees in the amounts for which the Trustees become legally obligated including recovery of liquidated damages, audit costs, filing fees and any other expenses incurred by the Trustees.

19

E-FILED
Wednesday, 18 October, 2006  11:45:13 AM
Clerk, U.S. District Court, ILCD

Nov 06 04 09:58a                                                    p.2

# UNIFORM FRINGE BENEFIT REMITTANCE REPORT

Any Questions? please call: (703) 739-7000 or Fax: (703) 683-0932

IMPORTANT — Except for change of address or change in Contribution Rate DO NOT enter out anything that is pre-printed.

TO ▶ Advanced rehab ch
5400 Fieldstone
Johnstown, IL

MONTH Dec.  YEAR 0C  LOCAL UNION NO.
NBF EMPLOYER #
AREA    INDUSTRY
NBF PLAN    CLASS
CONTRACT
PAGE NO.    PAYROLL DATE 2/50/05

☐ CHECK HERE IF NO HOURS TO REPORT (YOU WILL RECEIVE A REPORT FOR NEXT MONTH)  ☐ CHECK HERE IF FINAL REPORT (YOU WILL NOT RECEIVE A REPORT NEXT MONTH)

| SOCIAL SECURITY NO. (A) / LAST NAME AND FIRST INIT. (B) | (C) 401(K) RATE | (D) | (F) HOME LOCAL | (G) REGULAR | (H) OT/ @ 1 1/2 | (I) OT/ # 2 | (J) CLASS | (K) TAXABLE GROSS WAGES | (L) HEW, PENSION, MISC CONTRIBUTIONS | (M) WAGE RATE |
|---|---|---|---|---|---|---|---|---|---|---|
| Nath. Person | | | NBMI | SMOHI | Attw | AttrZ traw | Pervn | Berment & industry | Industry | |
| Heerson, Danny | | | | 14 | | | | 1090 | 189.50 | |
| Riley, Deb | | | | 78 | | | | 2152.80 | 1026.10 | |
| Gross, Hikki | | | | 9 - 80 25 | 22.5 | | | 2201.10 | | |
| Thomas, Scott | | | | 100.5 | 8 | | | 3105.00 | 1469.00 | |
| Bruner, Tim | | | | 16 | | | | 772.80 | 216.04 | |
| But, Tracy | | | | 16 | | | | 772.80 | 216.04 | |
| Schmitt, William | | | | 97 | 24 | | | 3781. | 1638.34 | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

| | 483.25  369.50 | 369.50 | TOTALS ▶ 257.50 | (G) | (H) 353.50 | (I) | (K) | (L) | |
|---|---|---|---|---|---|---|---|---|---|
| 1. TOTAL HOURS REPORTED | 1295  .12 | 103 | 456 | 456 | 456 | | 456 | 456 | |
| 2. CONTRIBUTION RATE PER HOUR | 1.25  .12 | .03 | .02 | 6.92 | .52—5.35 | | 1.08 | .01 | |
| 3. AMOUNT DUE (1 X 2) | $604.04 | $14.44 | $9.22 | $3146 | $257. | $457. | $ | $3142 | $ |
| 4. ADJUSTMENT PLUS OR MINUS — PLEASE ATTACH EXPLANATION | 381.63 | 11.04 | 7.01 | | 183. | 1905. | 28.20 | 24.75 | |
| 5. NET AMOUNT DUE | $ | $ | $ | $ | $ | $ | $ | $ | $ 11274.60 |

|  | NATIONAL BENEFIT FUNDS | Total Amount $ 1185. | 1. Gross Wages (Col. K) | $ |
|---|---|---|---|---|
|  | LOCAL FUNDS | Total Amount $ | 2. Total Benefit Contributions (Col. L) | $ 4786 |
| Prepared by | Title | Phone | 3. Gross Earnings (Col. K + Col. L) | $ 16060 |
| | | 5446.17 | 4. 3A5MI Contribution Rate | $ |
| Signature (see below) | Date | E-Mail | 5. 6A5MI Contribution (Line 3 x Line 4) | $ 481.83 |

By signing above, I acknowledge that this remittance is being submitted with the understanding that all pension trust requirements have been complied with on behalf of other members, officers, or individuals with financial interest in the company, which includes admission of proper application terms.

.02    .01    Y+Yauth    pm
Team    5Hwin    .25    .05
456.    456    456    456
9.12    4.56    114.00    22.80

EXHIBIT C

Received Time Mar.14.  4:50PM    #817  #18001 SHEETMETAL WORKERS LOCAL#

Nov 06 04 09:58a                                                                p.3

**SHEET METAL WORKERS'**
# UNIFORM FRINGE BENEFIT REMITTANCE REPORT

Any Questions? please call: (703) 739-7000 or Fax: (703) 683-0832
IMPORTANT — Except for change of address or change in Contribution Rate DO NOT cross out anything that is pre-printed.

TO ►

MONTH _____ YEAR _____ LOCAL UNION NO. _____
Jan    04
NBF EMPLOYER #
AREA _____ INDUSTRY
NPF PLAN _____ CLASS
CONTRACT
PAGE NO. _____ PAYROLL DATE _____
(LAST WEEK ENDING DATE COVERED BY REPORT)

☐ CHECK HERE IF NO HOURS TO REPORT (YOU WILL RECEIVE A REPORT FOR NEXT MONTH)   ☐ CHECK HERE IF FINAL REPORT (YOU WILL NOT RECEIVE A REPORT NEXT MONTH)

| SOCIAL SECURITY NO. (A) / LAST NAME AND FIRST INIT (B) | (C) 401(K) RATE | (D) | (F) HOME LOCAL | (G) REGULAR | (H) OT/ @ 1 1/2 | (I) OT/ @ 2 | (J) CLASS | (K) TAXABLE GROSS WAGES | (L) H&W, PENSION, MISC. CONTRIBUTIONS | (M) WAGE RATE |
|---|---|---|---|---|---|---|---|---|---|---|
| N. Pen.   Int. training | NBM | SHUH | H+W | APP. Train | Pensin | | Bithm Indusly | Industry | Team |
| Henson, Danny | | | | 92 | 19 | | | 343.20 | 1052.99 | |
| Riley, Dave | | | | 82 | 39.5 | | | 4098.60 | 1645.11 | |
| Brown, Gary | | .03 | | 26 | 19.5 | | | 1614.60 | 614.01 | |
| gross Harold | | | | 137 | 81 | | | | | |
| Brown, Kim | | | | 26 | 19.5 | | | 1614.60 | 616.01 | |
| Andres, Larry | | | | 26 | 19.5 | | | 1614.60 | 616.01 | |
| Thomas, Scott | | | | 122 | 34 | | | 4885.20 | 2112.24 | |
| Brunner, Tony | | | | 140 | 42.5 | | | 5823.60 | 2471.02 | |
| Burt, Tracy | | | | 24 | | | | 662.40 | 324.96 | |
| Schmidt, William | | | | 128.5 | 41.5 | | | 5464.80 | 1708.00 2304.80 | |

**TOTALS ►**

1. TOTAL HOURS REPORTED  1277.5 + 1019.00 | 1019.00 | 901.5 | 1119.5 | 901.5 | 901.5 | 901.5 | 901.5 | 1119.5

2. CONTRIBUTION RATE PER HOUR  1.25 | .12 | .03 | .02 | 6.90 | .52 | 5.39 | .08 | .07 | .02

3. AMOUNT DUE (1) X (2)  $1596.88 | $122.28 | $30.57 | $18.02 | $7724.55 | $468.78 | $4859.01 | $72.12 | $63.11 | $22.39

4. ADJUSTMENT PLUS OR MINUS = PLEASE ATTACH EXPLANATION

5. NET AMOUNT DUE  $_____ $_____ $_____ $_____ $_____ $_____ $_____ $_____ $_____

NATIONAL BENEFIT FUNDS   Total Amount $ 26778.54
LOCAL FUNDS   Total Amount $ 1375.13

1. Gross Wages (Col. K) .............. $ 29214.60
2. Total Benefit Contributions (Col. L) .... $ 11756.31
3. Gross Earnings (Col. K + Col. L) ....... $
4. SASMI Contribution Rate ............ $
5. SASMI Contribution (Line 3 x Line 4) .. $ 1239.13

Prepared by _____ Title _____ Phone _____

Signature (see below) _____ Date _____ E-Mail _____
By signing above, I acknowledge that this remittance is being submitted with the understanding that all pension trust requirements have been satisfied on behalf of correct members, officers, or individuals with financial interest in the company, which includes automation of proper registration forms.

SMWIA       Y + your       PAC
.01 +       .25 +          .05 +
1119.5      1119.5         1119.5
11.20       279.88         55.98

Received Time Mar.14.  4:50PM

9/9 'd  9826-ON                 812 #1e007 SAExaom 7Ai3W133HS   WA91:Z  9007 '9 'Inn

**E-FILED**
Wednesday, 18 October, 2006  11:45:22 AM
Clerk, U.S. District Court, ILCD

CAVANAGH & O'HARA
Attorneys At Law

1609 North Illinois Street
Swansea, Illinois 62226
Telephone (618) 222-5945
Fax (618) 222-6755

William K. Cavanagh
Michael W. O'Hara
Patrick J. O'Hara
James P. Moody

*Springfield Office*
407 East Adams Street
P.O. Box 5043
Springfield, Illinois 62705
Telephone (217) 544-1771
Telefax (217) 544-9894

July 11, 2006

John T. Long
Britt W. Sowle

### *FIRST AND FINAL NOTICE*

*Chicago Office*
20 South Clark
Suite 3000
Chicago, Illinois 60603
Telephone (312) 624-3141
Telefax (312) 855-0445

Of Counsel
Michael J. Masterson, P.C.

*Via Certified Mail and Regular Mail*
Advanced Metal Construction and Association
5400 Fieldstone Way
Johnsburg, Illinois 60050

RE:    *Delinquency to Sheet Metal Workers #218 Fringe Benefit Funds*

Dear Employer:

Please be advised, this firm serves as counsel to the Sheet Metal Workers #218 Fringe Benefit Funds. As such, we have been advised by the Fund that you are delinquent in submitting reporting forms and contributions for the months of December 2005 through June 2006. Due to your untimely reporting, in addition to the contributions for December 2005 through June 2006, you have been assessed a penalty of 10% of the total contributions due. Therefore, you must submit the contributions due for the months of **December 2006 through June 2006,** with reporting forms plus the applicable penalties.

This letter will be the last letter to you before action is taken in court for collection. The Funds are required by law to take such action as may be necessary to collect the sums due them.

If you feel that you have a valid reason for submitting your reports in an untimely manner or if you feel this may be an error, please notify us immediately. *You are reminded that you must submit monthly reports even though you may not have any members working during those reporting months*.

Under the provision of Section 515 of the Employee Retirement Income Security Act of 1974, the Court must assess against you various interest costs and damages in the event a Judgment is recovered against you. These costs are substantially higher than those the Funds are presently willing to accept. You will also be responsible for all attorney fees, court costs and any other expenses incurred in collection.

The Funds haves no desire to put you to the expense outlined above, but it was felt that it might be appropriate to make sure that you are aware of same so that you could take it into consideration in determining whether you want to voluntarily eliminate your delinquency without the necessity of litigation to collect the amount due.

EXHIBIT

D

If you do not desire that our collection efforts be pursued by way of a lawsuit, you should forward payment and contact the undersigned **within seven (7) days** from the date of this letter.

We sincerely hope we can have your cooperation in this matter in order to decrease your costs as well as ours and the employees who are participating in this Fund.

Very truly yours,

Britt W. Sowle

cc: Paul Hayes

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Advanced Metal Const &
Association
5400 Fieldstone Way
Johnsburg, IL 60050

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Doug Curtis_ ☐ Agent ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Doug Curtis   7-17-06

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☑ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service)   7005 1160 0000 2024 4790

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-154

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

7005 1160 0000 2024 4790

Postage $
Certified Fee   7/12/06
Return Receipt Fee (Endorsement Required)   Postmark Here
Restricted Delivery Fee (Endorsement Required)
Total Postage & Fees $4.64

Sent To Advanced Metal Const + Assoc.
Street, Apt. No.; or PO Box No. 5400 Fieldstone Way
City, State, ZIP+4 Johnsburg IL 60050

PS Form 3800, June 2002   See Reverse for Instructions

**E-FILED**
Wednesday, 18 October, 2006  11:45:30 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| SHEET METAL WORKERS LOCAL 218, ) | |
| SHEET METAL WORKERS LOCAL 218 ) | |
| PENSION FUND, SHEET METAL WORKERS ) | |
| LOCAL 218 APPRENTICESHIP  FUND, SHEET ) | |
| METAL WORKERS HEALTH AND WELFARE ) | |
| FUND, SHEET METAL WORKERS LOCAL 218 ) | |
| FRINGE BENEFIT FUNDS, SHEET METAL ) | |
| WORKERS LOCAL 218 INDUSTRY FUND ) | |

       Plaintiffs,     )

vs.               )   No.

ADVANCED METALCON & ASSOCIATION   )
CORP.,               )
       Defendant.   )

## AFFIDAVIT IN SUPPORT OF ATTORNEYS FEES

BRITT W. SOWLE, being first duly sworn, on oath deposes and states that the following

itemization accurately reflects the time expended with respect to the above-captioned matter:

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 7/11/06 | Received and reviewed fax from Paul Hayes regarding delinquent employer. Preparation of letter to employer demanding reporting forms and contributions for December 2005 through current via certified and regular mail. | 1.00 |
| 8/31/06 | Review file. Contacted insurer to discuss bond claim issue. Contacted local to provide update. | 0.50 |
| 9/8/06 | Review file. Telephone conference with employer regarding delinquent amounts still owed. Left voice message. | 0.50 |
| 9/14/06 | Research Illinois Secretary of State to obtain corporate information. Telephone conference with Sheriff's Department regarding service of summons. Preparation of draft Complaint for delinquent contributions, Summons, Certificate of | |


EXHIBIT
E

| | | |
|---|---|---:|
| | Service and Affidavit in Support of Attorney Fees. | 1.80 |
| 9/15/06 | Finalize Complaint. Preparation of Civil Cover Sheet. Assemble Exhibits. File pleadings with U.S. District Court via electronic filing. Preparation of correspondence to U.S. District Court enclosing filing fee for same. | 0.60 |
| | TOTAL HOURS 4.4 X $185.00 PER HOUR = | $814.00 |
| 9/15/06 | U.S. District Court - filing fee | $350.00 |
| 9/15/06 | McHenry Sheriff Fees | $ 46.65 |
| | **TOTAL FEES AND COSTS INCURRED TO DATE**: | $1,210.65 |

Further, Affiant sayeth naught

s/ Britt W. Sowle

BRITT W. SOWLE
**CAVANAGH & O'HARA**
**Attorneys for Plaintiffs**
1609 North Illinois Street
Swansea, Illinois 62226
Telephone:    (618) 222-5945
Facsimile:    (618) 222-6755
britt@cavanagh-ohara.com

Subscribed and sworn to before me this 12th day of October 2006.

Notary Public

"OFFICIAL SEAL"
MARY FERGUSON
NOTARY PUBLIC—STATE OF ILLINOIS
MY COMMISSION EXPIRES APRIL 2, 2009

E-FILED
Wednesday, 18 October, 2006  11:45:43 AM
Clerk, U.S. District Court, ILCD

🖎 JS 44   (Rev. 3/99)

## CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS

SHEET METAL WORKERS LOCAL #218 HEALTH & WELFARE FUND, et al, Plaintiffs,

### DEFENDANTS

ADVANCED METALCON & ASSOC., CORP.

**(b)** County of Residence of First Listed Plaintiff   Sangamon
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   McHenry
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Britt W. Sowle
Cavanagh & O'Hara
1609 North Illinois Street
Swansea, IL 62226          618/222-5945

Attorneys (If Known)

### II. BASIS OF JURISDICTION     (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT     (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury— | of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 900 Appeal of Fee Determination |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | ☐ 790 Other Labor Litigation | or Defendant) | Under Equal Access to |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☒ 791 Empl. Ret. Inc. | 26 USC 7609 | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | Security Act | | State Statutes |
| | | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

### V. ORIGIN     (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Breach of collective bargaining agreement, 29 U.S.C. § 185; Recovery of employee benefits, 29 U.S.C. §1132

### VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

### VIII. RELATED CASE(S) IF ANY     (See instructions):

JUDGE _____

DOCKET NUMBER _____

DATE   October 10, 2006

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____